IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT, *et. al.*, <br><br>　　　　Plaintiffs, <br>　v. <br><br>THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR18 TRUST, *et. al.*, <br><br>　　　　Defendants. <br>_____/ <br>NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, *et. al.*, <br><br>　　　　Plaintiffs, <br>　v. <br><br>WELLS FARGO ASSET SECURITIES CORPORATION, *et. al.*, <br><br>　　　　Defendants. <br>_____/ | Nos. C 09-1376 SI and C 09-1620 SI <br><br>**ORDER RE:  MOTIONS TO CHANGE VENUE, APPOINTMENT AS LEAD PLAINTIFF, SELECTION OF LEAD COUNSEL, AND CONSOLIDATION** |

　　　　Defendants in both of these related actions have moved to transfer venue to the Southern District of New York.[1] *(Detroit* action, Docket No. 73; *New Orleans* action, Docket No. 13). In addition, various plaintiffs and would-be plaintiffs have filed motions to consolidate the actions, to appoint a lead

---

[1] The first filed action was *General Retirement System of the City of Detroit v. Wells Fargo Mortgage Backed Securities 2006-AR18 Trust, et al.*, No. C 09-1376 (the "*Detroit* action"). The second filed was *New Orleans Employees Retirement System, et al. v. Wells Fargo Asset Securities Corporation, et al.*, No. C 09-1620 (the "*New Orleans* action"). The cases are legally and factually similar, differing primarily in the identity and number of the parties. Plaintiffs in the *New Orleans* action challenge more Certificate offerings (fifty-four rather than twenty-two) and have named more Underwriters as defendants than did plaintiffs in the *Detroit* action.

plaintiff, and to approve plaintiffs' selection of lead counsel. (*Detroit* action, Docket Nos. 43,[2] 47 and 52). The motions are scheduled for hearing on July 17, 2009.

Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES defendants' motions to change venue, GRANTS the motion to consolidate, and GRANTS the motion by New Orleans Employees' Retirement System, the Louisiana Sheriffs' Pension and Relief Fund, the Government of Guam Retirement Fund and the Alameda County Employees' Retirement Association (hereinafter sometimes "Public Funds") for appointment as lead plaintiffs and for designation of Bernstein Litowitz Berger & Grossmann LLP as lead counsel for the class.

## BACKGROUND

The action arises from defendants' sale of "mortgage pass-through certificates" ("Certificates"), which "are securities entitling the holder to income payments from pools of mortgage loans and/or mortgage-backed securities." *New Orleans* Complaint ¶ 1.[3] Plaintiffs allege that the Certificates were sold pursuant to registration statements, prospectuses, and supplemental prospectuses (collectively, the "Offering Documents") that contained false and misleading statements and omissions. *Id.* ¶ 6.

Defendant Wells Fargo originated and sponsored the securitization of the Certificates and served as their custodian, holding the mortgage notes and files at various storage facilities, one of which is in California. Complaint ¶ 7, Decl. of Matthew P. Jubenville in Supp. of Pls. Opp. to Defs. Mot. to Transfer ("Jubenville Decl."), Ex. A. AS-27. Wells Fargo's parent company is Wells Fargo & Company, Inc., which is located in San Francisco. *Id.*, Ex. C. The majority of the loans underlying the Certificates were produced at loan production offices in California and 42% of the loans were secured

---

[2] Docket No. 43, the motion by the General Retirement System of the City of Detroit to be appointed lead plaintiff, was later withdrawn, and Detroit's support was thrown to the New Orleans "Public Funds" group plaintiffs. *Detroit* action, Docket No. 101.

[3] The factual background is based on the *New Orleans* complaint, which, as noted above, differs factually from the *Detroit* complaint only in that it challenges more of the Certificate offerings and names more Underwriters as defendants.

by real property in California. Jubenville Decl., Ex. A. at S-42; Ex. I. Wells Fargo marketed the Certificates to investors throughout California and the nation, including to plaintiff Alameda County Employees' Retirement Association ("Alameda"), which purchased over $11 million in Certificates. Corrected Decl. of David R. Stickney in Supp. of Public Funds' Mot. to Appoint Lead Pl. ("Stickney Decl."), Ex. C-4. The Certificates were issued by fifty-four Issuing Trusts, which were organized under New York law. Complaint ¶ 9; Decl. of Bradley Davis in Supp. of Defs. Mot. to Transfer ("Davis Decl.") ¶ 7. Wells Fargo employees responsible for issuing the Certificates and/or preparing the Offering Documents also performed work in Maryland and New Jersey. Davis Decl. ¶ 8.

The Certificates were rated by defendants the McGraw-Hill Companies, Inc., Moody's Investors Service, Inc., and Fitch, Inc. (collectively the "Rating Agency Defendants"), based on their analysis of the loan pools. Complaint ¶¶ 1, 10. The Rating Agency defendants are based in New York City and performed the rating work in their respective offices in New York City. Complaint ¶¶ 30-32; Decl. of Huxley Somerville in Supp. of Defs. Mot. to Transfer ("Somerville Decl.") ¶¶ 2, 10; Decl. of M. Scott Mason in Supp. of Defs. Mot. to Transfer ("Mason Decl.") ¶¶ 2, 9; Decl. of Warren Kornfeld in Supp. of Defs. Mot. to Transfer ("Kornfeld Decl.") ¶¶ 6-8; 9.

The certificates were sold to investors by the Underwriter defendants, all but one of which is located in New York City, according to the descriptions contained in the Offering Documents. Complaint ¶ 5; Decl. of Nicole L. Felton in Supp. of Defs. Mot. to Transfer ("Felton Decl.") ¶ 2, 5; Decl. of Michelle Gill in Supp. of Defs. Mot. to Transfer ("Gill Decl.") ¶ 3; Decl. of Bruce Kaiserman in Supp. of Defs. Mot. to Transfer ("Kaiserman Decl.") ¶ 5; Decl. of Joy Margolies in Supp. of Defs. Mot. to Transfer ("Margolies Decl.") ¶ 5; Decl. of Lydia Foo in Supp. of Defs. Mot. to Transfer ("Foo Decl.") 5; Decl. of Mark Wirth in Supp. of Defs. Mot. to Transfer ("Wirth Decl.") ¶ 5; Decl. of John G. Moon in Supp. of Defs. Mot. to Transfer ("Moon Decl.") ¶ 5; Decl. of Michael M. McGovern in Supp. of Defs. Mot. to Transfer ("McGovern Decl.") ¶ 7; Decl. of Ray Vohra in Supp. of Defs. Mot. to Transfer ("Vohra Decl.") ¶ 3; Decl. of Alyssa Kelman in Supp. of Defs. Mot. to Transfer ("Kelman Decl.") ¶ 3. A number of the Underwriter and Rating Agency defendants' employees involved in the Offerings are no longer employed by defendants, but the majority still live in New York. Gill Decl., ¶ 5; Kaiserman Decl. ¶ 6; Margolies Decl. ¶6; Foo Decl. ¶ 6; Wirth Decl. ¶ 6; Moon Decl. ¶ 6; McGovern Decl. ¶ 8;

3

Felton Decl. ¶ 6.

On March 27, 2009, plaintiff General Retirement System of the City of Detroit filed the *Detroit* action, which is a class action complaint for violation of federal securities law. On April 13, 2009, plaintiffs New Orleans Employees' Retirement System, the Louisiana Sheriffs' Pension and Relief Fund, the Government of Guam Retirement Fund, and the Alameda County Employees' Retirement Association (for purposes of these motions, the "Public Funds") filed the *New Orleans* action, also a federal securities class action complaint. The crux of the alleged fraud in both cases is that "the Offering Documents misstated and omitted material information regarding the quality of the loans underlying the Certificates and the process by which the Depositor acquired those loans." Complaint ¶ 12. On June 12, 2009, defendants filed motions to change venue in both actions to the Southern District of New York (the "SDNY").

On June 1, 2009, plaintiff General Retirement System of the City of Detroit filed a motion in the *Detroit* action to serve as lead plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act, and for approval of its selection of counsel. (*Detroit* action, Docket No. 43). On the same date, two institutional investors, the Employees' Retirement System of the Government of the Virgin Islands and the City of Sterling Heights Police & Fire Retirement System (for purposes of these motions, the "Institutional Investor Group"), filed a motion in the *Detroit* action to consolidate the related actions, to be appointed as lead plaintiff, and for approval of their selection of lead counsel. (*Detroit* action, Docket No. 47). Also on June 1, the New Orleans Public Funds group plaintiffs filed a motion for appointment as lead plaintiffs, approval of their selection of lead counsel, and consolidation of the two cases. (*Detroit* action, Docket No. 52). On June 26, 2009, plaintiff General Retirement System of the City of Detroit withdrew its motion for appointment as lead plaintiff and selection of lead counsel, and filed a brief in support of the New Orleans Public Funds group plaintiffs' motion.

Now before the Court are defendants' motions to change venue in both cases to the SDNY pursuant to 28 U.S.C. § 1404(a), the unopposed motions to consolidate the actions, and the competing motions of the Institutional Investor Group and the New Orleans Public Funds group plaintiffs for appointment as lead plaintiff/ lead counsel.

4

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must establish: "that venue is proper in the transferor district; that the transferee district is one where the action might have been brought; and that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Once venue is determined to be proper in both districts, courts use the following factors to evaluate whether a transfer of venue would be more convenient to the parties and the witnesses and would promote the interests of justice: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

**DISCUSSION**

**1.    Defendants' Motions to Change Venue**

The parties agree that venue would be proper in either this district or in the SDNY. The key dispute, therefore, is whether transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.

  **A.    Plaintiffs' Choice of Forum**

The parties disagree as to the weight that should be afforded to plaintiffs' choice of forum.

Defendants contend that it is irrelevant and should be afforded no weight; plaintiffs contend that it is entitled to substantial weight. The Court has reviewed the parties' factual showing and legal arguments, and concludes that plaintiffs' choice in this case is entitled to considerable deference.

In considering a motion to transfer, courts generally afford substantial weight to a plaintiff's choice of forum, subject to various conditions. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, (1981). The plaintiff's choice is generally given less deference where the action is brought on behalf of a nationwide class. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). However, Section 22(a) of the Securities Act, 15 U.S.C. § 77(v)(a), specifically provides plaintiffs very broad alternatives in choosing a forum,[4] and "[w]ithout question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum, and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *See Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (addressing Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, which reads, in relevant part, "[a]ny suit or action to enforce liability or duty . . . may be brought in any district wherein the defendant is found or is an inhabitant or transacts business."). "Where venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law, even where that case is brought as a class action." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) (citing *Vigman*, and holding that, like the more permissive venue provision of the securities laws, Title VII of the Civil Rights Acts of 1964 allows plaintiffs a liberal choice in choosing a forum, although it does not prohibit transfer away from the chosen forum.).

Defendants argue that plaintiffs' choice of forum should not be "afforded special weight" because of the special venue provisions of the federal securities laws, and cite some district court decisions to that effect.[5] In general, however, these cases have concluded only that the special venue

---

[4] Section 22(a) provides, in relevant part, that an action "[m]ay be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein."

[5] *See, e.g., In re Yahoo! Inc.*, No. CV 07-3125, 2008 U.S. Dist. LEXIS 20605, at *16-22 (C.D. Cal. Mar. 10, 2008); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 405-06 (S.D.N.Y. 1998) (holding that Section 77(v) of the Act does "not alter the standard employed in deciding whether transfer

6

1 provision does not *enhance* the deference afforded to plaintiffs' choice, and that the special venue 2 provision should not prohibit transfer where the factors of convenience and justice strongly favor the 3 defendants, as *Vigman* recognizes.  Accordingly, the Court rejects this argument for affording no 4 deference to plaintiffs' choice of forum.

The deference given to the plaintiff's choice of forum is also based on the extent of both parties' contacts with the forum, and the extent of relevant activity in the forum. *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968); *see also Lou*, 834 F.2d at 739.  Here, plaintiff Alameda County Employees' Retirement Association is a resident of California, defendant Wells Fargo has its headquarters in San Francisco, over half of the loans at issue were produced in California offices and nearly half of the real property securing the loans at issue is in California.  Thus some deference is warranted.  That substantial relevant activity occurred elsewhere does not obviate this deference.

Under all these circumstances, the Court disagrees with defendants' contention that plaintiffs' choice of forum should be treated as "entirely irrelevant."  Rather, the Court finds that considerable deference should be given to plaintiffs' choice of forum.

### B.   Convenience of Parties

The parties dispute whether this district or the SDNY is more convenient.  Defendants argue that SDNY is more convenient for them because the majority of the Rating Agency defendants and Underwriter defendants are located in New York.  Additionally, although none of the individual defendants[6] resides in New York, that venue is presumably more convenient for them because they have joined the motion for transfer.  Plaintiffs respond that the Wells Fargo defendants are based in San Francisco and do not have corporate offices in New York.  They argue that this district is more convenient for them because the Alameda County Employees' Retirement Association is located here. Defendants respond that New Orleans and Detroit are closer to New York than they are to California.

---

is appropriate" in a securities class action).

[6] The individual defendants, David Moskowitz, Franklin Codel, Thomas Neary, and Douglas K. Johnson, are current or former officers and directors of Wells Fargo Asset Securities Corporation.

7

The Court finds that this factor is neutral. Neither party has offered a persuasive argument that their convenience from litigating in their preferred forum outweighs the inconvenience to the opposing party.

### C. Convenience of Witnesses

Most of the witnesses in this case are likely to be defendants' current and former employees. The parties' dispute over which district is more convenient for the witnesses therefore depends on the location of these employees and the potential relevance of their testimony. Also relevant is the ability of this district or SDNY to compel the appearance of third-party witnesses.

Generally, the district where most witnesses are located is the more convenient forum. Additionally, some courts have accorded greater weight to the convenience of third-party witnesses than to the convenience of party witnesses, since the latter can be compelled to attend trial without subpoena. *See, e.g., Flotsam of Cal., Inc. v. Huntington Beach Conference and Visitors Bureau*, No. C-06-7028, 2007 WL 1152682 *3 (N.D.Cal. April 18, 2007); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994). Where the transferee court has the ability to compel the appearance of witnesses, transfer to that court is likewise convenient. *See Sorenson v. Philips Plastics Corp.*, No. C 08-03094 MHP, 2008 WL 4532556, at *2 (N.D. Cal. Oct 9, 2008); *Pralinsky v. Mut. of Omaha Ins.*, No. C 08-03191 MHP, 2008 WL 4532563, at *4 (N.D. Cal. Oct. 9, 2008). However, the court must not only consider "the number of witnesses in each location," but also "examine[ ] the materiality and importance of the anticipated witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984). The party moving for transfer must "clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Bacik v. Peek*, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993).

Here, the Court finds that the convenience of the witnesses somewhat favors transfer to the SDNY. Although plaintiffs argue that Wells Fargo employees and former employees are located in California, plaintiffs do not provide information about the number of these potential witnesses. Defendants, in contrast, have filed numerous declarations from former and current employees

8

establishing that a large number of potential witnesses, with information relevant to the representations in the Offering Documents and the process by which the Certificates were rated, are located in or near New York. Because it appears that more witnesses are concentrated in or near the SDNY, transfer to that venue would be more convenient for the witnesses and would reduce the costs of litigation.

Accordingly, the Court finds that convenience to witnesses weighs slightly in favor of transfer. However, the Court notes, as have other courts, that the significance of this factor is substantially reduced by the ease of communication and interstate air travel in today's business community. *See Effron v. Sun Line Cruises. Inc.,* 67 F. 3d 7, 10 (2nd Cir. 1995) (holding "forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel"); *Flotsam of Cal., Inc.*, at *8.

### D.     Ease of Access to Evidence

The parties dispute whether the bulk of the evidence is located in California or New York, as well as how much weight this factor deserves. In general, the majority of documents relevant to a securities class action will be in defendants' possession. *See Blass v. Capital Int'l Sec. Group*, No. 99-CV-5738, 2001 U.S. Dist. LEXIS 3504, at *17-18 (E.D.N.Y. Mar. 23, 2001). However, the location of documents is generally given little weight in light of modern copying and transportation methods. *See In re Funeral Consumers Antitrust Litig.*, No. C 05-1804 WHA, 2005 WL 2334362, at *4 n.2 (N.D. Cal. Sept 23, 2005).

Here, most of the documents related to the preparation of the Offering Documents and/or the issuance of the Certificates are located in or near New York, whereas much of evidence related to the mortgage loans underlying the Certificates is stored by Wells Fargo in California, among other locations. Evidence is thus located in both districts. In any event, the documents in each district can be copied and transported with equal ease in light of available technologies. Therefore, the Court finds that this factor is neutral and weighs neither for nor against transfer.

### E.     Local Interest in the Controversy

The parties dispute which district has a stronger interest in the controversy based on the location

of defendants and the underlying conduct. Although the Issuing Trusts are New York entities and the vast majority of the Underwriter and Rating Agency defendants are based in New York, a substantial number of the loans underlying the Certificates were made in California by Wells Fargo and secured by real property in California. Likewise, plaintiff Alameda County Employees' Retirement Association is a California resident, as discussed above. As each district has an interest in the controversy, this factor is neutral and neither weighs for nor against transfer.

### F. The Remaining Three Factors

The parties do not dispute that the remaining factors, such as familiarity of each forum with the applicable law, feasibility of consolidation with other claims, and court congestion, are each neutral.

In sum, the majority of the factors are neutral, with the exception of the convenience of witnesses, which weighs slightly in favor of transfer, and plaintiffs' choice of forum, which is entitled to considerable deference. It remains defendants' burden to demonstrate that transfer is appropriate, and the Court finds that under the circumstances presented defendants have not met that burden. The Court therefore DENIES defendants' motions to transfer venue to the SDNY.

## 2. Consolidation, Lead Plaintiff and Lead Counsel

### A. Consolidation

The New Orleans Public Funds group plaintiffs have filed a motion to consolidate the *Detroit* and *New Orleans* actions, which defendants have not opposed. Federal Rule of Civil Procedure 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). The Court agrees that these actions present virtually identical factual and

legal issues and therefore should be consolidated. The Court therefore GRANTS the motion to consolidate.

### B.     Lead plaintiff

Section 21D of the Private Securities Litigation Reform Act of 1995 (PSLRA) provides procedures for selecting lead plaintiffs in a securities class action. All proposed lead plaintiffs submit a sworn statement setting forth certain facts designed to assure the court that the plaintiff (i) has suffered more than a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to serve as a class representative. 15 U. S.C. § 78u-4(a)(2)(A). The plaintiff in the first lawsuit to be filed must additionally publish notice of the complaint in a widely circulated business publication within twenty days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must include a description of the claim and notify prospective class members that they may move within 60 days of the notice to be named lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II). Once applications for lead plaintiff status are closed, the district court must determine who among the movants for lead plaintiff status is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

In the Ninth Circuit, *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), governs lead plaintiff selection and establishes a three-step process. First, as discussed above, timely and complete notice of the action must be published. *Id.* at 729. Second, the district court considers the losses suffered by potential lead plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). The court must thus determine which plaintiff "has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. Finally, the court focuses on that plaintiff to ensure that the proposed lead plaintiff "satisfies the requirements of [Fed. R. Civ. Pro.] 23 (a), in particular those of 'typicality' and 'adequacy.'" *Id.* A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." *Id.* In step three, other plaintiffs

have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. *Id.* at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

Here, the New Orleans Public Funds group plaintiffs and the Institutional Investor Group plaintiffs have filed timely motions for appointment as lead plaintiff. It is not clear whether the Institutional Investor Group plaintiffs intend to pursue their motion, because they did not file an opposition to the New Orleans Public Funds group plaintiffs' motion and did not participate in the briefing over venue transfer. In any event, the Court finds that the New Orleans Public Funds group plaintiffs are more appropriately appointed as lead plaintiff.

The New Orleans Public Funds group plaintiffs purchased Certificates with a face value of over $34.5 million. *See* Stickney Decl., Exs. C-1, C-2, C-3, C-4, while the Institutional Investor Group plaintiffs purchased Certificates with a face value of approximately $11.5 million. *See* Decl. of Erik D. Peterson In Supp. of Pls. Mot. to Consolidate, Appoint. Lead Pl. and Counsel ("Peterson Decl."), Exs. A, B. The New Orleans Public Funds group plaintiffs have made an adequate preliminary showing that they satisfy the typicality and adequacy requirements of Rule 23(a): like all plaintiffs in this action, they claim that they purchased Certificates based on alleged misrepresentations in the Offering Documents (typicality) and there appears to be no reason that their interests would conflict with those of the class (adequacy). As the Public Funds group plaintiffs filed proper notice of the action, have the largest financial interest in the relief sought, and have made the required showing under Rule 23(a), they are presumptively the most adequate plaintiff.

The Institutional Investor Group plaintiffs raise no issues that overcome this presumption. Accordingly, the Court GRANTS the New Orleans Public Funds group plaintiffs' motion for appointment as lead plaintiff.

### C.     Lead counsel

Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court generally should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." *Id.* at § 78u-4(a)(3)(B)(iii)(II)(aa). In the Ninth

12

1 Circuit, *Cavanaugh* establishes the standard for approval of lead counsel. "[T]he district court does not 2 select class counsel at all," and generally approves the lead plaintiff's selection of counsel. *Id.* at 732- 3 33. Here, the New Orleans Public Funds group plaintiffs have selected Bernstein Litowitz to 4 represent them. The Court approves their selection and GRANTS the New Orleans Public Funds group 5 plaintiffs' motion for appointment of lead counsel.

## CONCLUSION

For the foregoing reasons and for good cause shown on the current record, the Court hereby DENIES defendants' motions for change of venue (*New Orleans* action, Docket No. 13, *Detroit* action, Docket No. 73). The Court GRANTS the New Orleans Public Funds group's motion for appointment as lead plaintiff and appointment of Bernstein Litowitz as lead counsel (*Detroit* action, Docket No. 52) and DENIES the Institutional Investor Group's motion for appointment as lead plaintiff and appointment of lead counsel (*Detroit* action, Docket No. 47). Plaintiff General Retirement System of Detroit's motion for appointment as lead plaintiff is DENIED as moot (*Detroit* action, Docket No. 43). The New Orleans Public Funds group's motion for consolidation is GRANTED. These cases shall be consolidated under the lower case number, C 09-1376 SI (the *Detroit* action), and C 09-1620 (the *New Orleans* action) shall be administratively closed.

**IT IS SO ORDERED.**

Dated: July 16 , 2009

SUSAN ILLSTON
United States District Judge